IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

FREDERICK MCMILLAN,

    Petitioner,

       v.

UNITED STATES OF AMERICA,

    Respondent.

CIVIL NO.:    WDQ-11-1219
CRIMINAL NO.: WDQ-09-0627

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Frederick McMillan pled guilty to bank robbery.  On June 21, 2010, he was sentenced to 151 months imprisonment.  Pending is McMillan's *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  The Court has determined that no hearing is necessary.  *See* Rule 8 of the Rules Governing § 2255 Proceedings.  For the following reasons, McMillan's motion to correct sentence will be denied.

I.   Background[1]

In July, 2009, McMillan committed 10 robberies of five federally insured financial institutions.  ECF No. 12 at 8-9.  On July 28, 2009, McMillan surrendered to the FBI.  He admitted the robberies and identified himself on surveillance video at the banks.  *Id.* at 9.

---

[1] The facts were agreed to by McMillan and included in his March 24, 2010 Plea Agreement.  ECF No. 12.

On March 24, 2010, McMillan pled guilty to 10 counts of
bank robbery.  ECF No. 11.  Assistant Federal Public Defender
Jeffrey Risberg represented him.  ECF No. 27.  During the plea
colloquy, McMillan told the Court that he had received mental
health treatment occasionally since 2006 and had been diagnosed
with schizophrenia, depression, and hallucinations.  *Id.* 5:8-25,
6:1-25, 7:1-25, 8:1.  McMillan took Risperdal and Trazodone for
schizophrenia and Wellbutrin for depression.  *Id.* 6:1-10.
Risberg told the Court that he believed McMillan understood
where he was and what was going on, and was "completely lucid"
during the pre-plea interview.  *Id.* 8:16-25.

In his plea agreement, McMillan admitted the robberies and
agreed that the adjusted offense level, before chapter 3 or 4
adjustments, was 29.  ECF No. 12 ¶¶2, 6(e).  The parties
disputed whether McMillan was a career offender.  *Id.* ¶7.  They
agreed that "no other . . . sentencing guidelines factors,
potential departures or adjustments set forth in the United
States Sentencing Guidelines will be raised or are in dispute."
*Id.* ¶9

The government agreed not to oppose a two-level reduction
in the offense level for acceptance of responsibility and to
move for an additional one-level decrease.  *Id.* ¶6(f).  It also
agreed to recommend a sentence within the advisory guidelines
range.  *Id.* ¶10.

2

McMillan and Risberg signed the plea agreement.  ECF No. 12 at 7, 9.  McMillan acknowledged that he understood and voluntarily agreed to the plea agreement and did not wish to change any part of the stipulation, as the stipulated facts were true.  *Id.*  Risberg represented that he had reviewed the agreement with McMillan, and McMillan had told him he understood and accepted the terms, and was signing the agreement voluntarily.  *Id.* at 7.  McMillan orally repeated these representations to the Court at his rearraignment.  ECF No. 27 at 10:13-25; 11:1-14.

On June 21, 2010, at sentencing, Risberg conceded that McMillan was a career offender.[2]  ECF No. 28 at 5:11-15.  His total offense level was 29 and his criminal history category was VI, yielding an advisory sentencing guidelines range of 151 to 188 months imprisonment.  ECF No. 12 ¶8.

Risberg sought a 19 month downward variance based on McMillan's extraordinary acceptance of responsibility.  ECF No. 28 at 10:3-21.  In support, Risberg pointed out that McMillan "remembered each and every bank that he had robbed, and he gave those details to the FBI."  *Id.* 7:1-3.  He also noted that one of the predicate convictions "would have been timed out and

---

[2] In 1999, McMillan was convicted of second-degree assault in the District Court for Baltimore County.  Presentence report at 12 (sealed).  McMillan repeatedly struck his wife in the face with a shoe, causing "visible swelling and cuts to the face."  *Id.* In 2000, he was convicted of bank robbery in this Court.  *Id.*

would have not made him a career offender" had he committed the robberies three months later. *Id.* 9:16-18.  Risberg also told the Court of McMillan's dependence on drugs and mental health issues. *Id.* 6:24-25; 7:19-20.

The Court noted that McMillan had "obvious and clear serious mental health and substance abuse problems, is a career offender, and each of the ten robberies included a specific threat of death." *Id.* 12:7-10.  It observed that he was "a bit better mentally organized than most of the people that [the Court had] encountered who have had the schizophrenia diagnosis." *Id.* 12:18-19.  The Court rejected proposed variances for reduced likelihood of recidivism and extraordinary acceptance of responsibility.  It sentenced him to 151 months imprisonment, the low end of the advisory guideline range. *Id.* 12:20-25; 13:3-8.  The Court stated that the sentence would protect the public and "provide an opportunity for medical care for Mr. McMillan." *Id.* 13:11-14.

McMillan appealed his sentence; on December 16, 2010, the Fourth Circuit dismissed his appeal, finding that he knowingly waived his right to appeal in the plea agreement.  ECF No. 29.

On May 9, 2011, McMillan moved to correct his sentence pursuant to 28 U.S.C. § 2255.  ECF No. 36.  The government opposed the motion.  ECF No. 38.

II.  Analysis

McMillan contends he is entitled to resentencing because his attorney provided ineffective assistance of counsel at the original sentencing.  ECF No. 36 at 5.

A.  Ineffective Assistance of Counsel

1.  Legal Standard

The Sixth Amendment guarantees the effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prove ineffective assistance, McMillan must show: (1) counsel's performance was deficient and (2) the deficiency prejudiced his defense.  *Id*. at 687.  To show deficient performance, McMillan must establish that counsel made errors so serious that the "representation fell below an objective standard of reasonableness."  *Id*. at 688.

To show prejudice, he must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Because McMillan argues that the sentence--rather than the conviction--was imposed without effective assistance of counsel, he must show that his sentence would have been less if counsel had not erred.  *United States v. Breckenridge*, 93 F.3d 132, 136 (4th Cir. 1996).[3]

---

[3] When a defendant who pled guilty challenges his conviction or the *imposition* of sentence, the focus is whether counsel's

2.  Counsel's Decision Not to Investigate Mental
History or Request a Psychiatric Evaluation

McMillan contends that Risberg failed to "investigate and
develop for sentencing purposes evidence of [his] mental illness
records," and should have requested a psychiatric evaluation
before sentencing.  ECF No. 36 at 8-9.  At sentencing, Risberg
made clear, and the Court considered, McMillan's mental health
history, including his schizophrenia and depression.[4]  ECF No. 28
at 6:24-25, 7:19-20, 12:7-10.  The Court accepted that McMillan
had "serious mental health . . . problems," but determined that,
despite those problems, a 151 month sentence was appropriate.
*Id.* 12:8, 13:7-14.  Accordingly, McMillan suffered no prejudice
because Risberg did not present McMillan's medical records at,
or request an evaluation before, sentencing.

---

"performance affected the outcome of the plea process."  *Hill v.
Lockhart*, 474 U.S. 52, 59 (1985).  That defendant must show that
"there is a reasonable probability that, but for counsel's
errors, he would not have pleaded guilty and would have insisted
on going to trial."  *Id.*  Here, McMillan challenges only his
attorney's performance at sentencing.  *See United States v.
Tucker*, 603 F.3d 260, 267 (4th Cir. 2010) (applying *Breckenridge*
standard to challenge to sentence imposed on guilty plea);
*Tilghman v. United States*, No. 08-831, 2008 WL 4372812 at *2 (D.
Md. Sep. 18, 2008).

[4] McMillan states that Risberg "took it upon [him]self to become
a doctor," ECF No. 36 at 9, when Risberg told the Court he
"[couldn't] say" he was "convinced the schizophrenia diagnosis
[was] correct," ECF No. 28 at 8:10-13.  If that statement was
error, McMillan suffered no prejudice because the Court accepted
that he had "serious mental health . . . problems."  *Id.* 12:8.

3.  Counsel's Failure to Request a Downward Departure
or Variance

i.  McMillan Agreed that No Departures Applied

McMillan agreed in the plea agreement not to request any
guidelines-based departures at sentencing.  ECF No. 12 ¶9.
Risberg would have breached McMillan's plea agreement by
requesting a downward departure based on McMillan's mental
capacity.  *Id.*  Released from its obligations under the plea
agreement, the government could have sought enhancements and
upward departures, and opposed any adjustment for acceptance of
responsibility.  *See* ECF No. 12.  It was reasonable for Risberg
to comply with the plea agreement and avoid raising McMillan's
exposure.  *Smith v. United States*, No. 05-cr-0201, 2008 WL
3992155 at *6 (W.D.N.C. Aug. 27, 2008) (Counsel was not
ineffective for failing to make an objection that would have
breached the terms of the plea agreement).

ii.  McMillan Was Not Entitled to a Departure

McMillan contends that he should have received a downward
departure based on his mental capacity because he has been
dependent on drugs since age 15 and was diagnosed with
schizophrenia in 2009.  Under U.S.S.G. §5K2.13, the Court may
depart downward if (1) the defendant suffered from a
significantly reduced mental capacity when he committed the
offense and (2) it "contributed substantially to the commission

7

of the offense."  The Court may not depart on this ground if "the significantly reduced mental capacity was caused by the voluntary use of drugs; [or] the defendant's criminal history indicates a need to incarcerate the defendant to protect the public."  *Id.*

McMillan was not entitled to a departure for mental capacity based on his voluntary drug use.  *Id.*  The Court concluded that there was a "continuing need of protection for the public from the defendant."  ECF No. 28 at 13:11-12. Accordingly, if his mental illness had contributed substantially to the offense, he was not entitled to a downward departure because of the need to protect the public.  Accordingly, Risberg's failure to request a departure was not objectively unreasonable.

### iii. Variances Were Not Appropriate

As discussed above, the Court accepted that McMillan had "serious mental health . . . problems," but determined that, despite those problems, a 151 month sentence was appropriate. *Id.* 12:8, 13:7-14.  Accordingly, though Risberg did not explicitly request a downward variance, McMillan suffered no prejudice because it was not reasonably likely that the Court would have granted one.  *See Smith*, 2008 WL 3992155 at *6.

4.    Counsel's Failure to Challenge Prior Convictions

McMillan contends that Risberg "failed to fight for dismissal" or exclusion of his prior convictions.  ECF No. 36 at 10.  "[I]f, by the time of sentencing . . . a prior conviction has not been set aside on direct or collateral review, that conviction is presumptively valid and may be used to enhance the federal sentence." *Daniels v. United States*, 532 U.S. 374, 382 (2001) (*citing Custis v. United States*, 511 U.S. 485, 497 (1994)).  A defendant may not collaterally attack his prior convictions during sentencing.  *Custis*, 511 U.S. at 496. Accordingly, the voiding of prior convictions during sentencing for the bank robberies was unlikely.  Risberg's decision not to request that remedy was objectively reasonable.

Further, Risberg asked the Court to exclude one of McMillan's prior convictions from its consideration, and the Court declined to do so.  ECF No. 29 at 9:1-21.  McMillan has provided no justification for excluding his prior convictions from consideration.  *See* ECF No. 36.  The Court finds no error.

5.    Failure to Prepare and Protect

McMillan contends that Risberg "failed to fully aid and protect [him] at sentencing and . . . failed to prepare [him] for sentencing."  ECF No. 36 at 10.  McMillan has provided no specific examples aside from the allegations discussed above.

*See id.*  As noted, those allegations lack merit.  Accordingly, the petition will be denied.

     B.   Changes in the Transcript

     McMillan argues that page eight of the sentencing transcript "ha[s] been altered."  ECF No. 36 at 9.  He believes that lines 14 and 15 of page eight of the sentencing transcript[5] do not reflect Risberg's statements at sentencing.  *Id.* McMillan does not indicate what he believes Risberg actually said or how, if at all, he was prejudiced by the alleged alteration.  *Id.*  The Court has not relied on those lines in sentencing or its determination that McMillan's petition lacks merit.  Accordingly, McMillan has not suffered prejudice.[6]

     C.   Certificate of Appealability

     A certificate of appealability ("COA") must issue before a petitioner may appeal the decision in a 28 U.S.C. § 2255 case. *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).  A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). The petitioner "must demonstrate that reasonable jurists would

---

[5] Lines 14 through 15 are: (Risberg) ". . . Honor.  I can't say it in the sense that -- I'm certainly not a psychiatrist, but I don't know.  That doesn't make a lot of . . . ."  ECF No. 27 at 8:14-15.

[6] *See Strickland*, 466 U.S. at 687 (no ineffective assistance of counsel without prejudice); *Tedford v. Hepting*, 990 F.2d 745, 747 (3rd Cir. 1993) (no constitutional violation for inaccuracies in transcript unless prisoner shows prejudice).

find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (*quoting Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (internal quotations omitted). Denial of a COA does not prevent a petitioner from seeking permission to file a successive petition or pursuing his claims upon receipt of such permission.

Because McMillan has not made a substantial showing of the denial of constitutional rights, this Court will not issue a COA.

III. Conclusion

For the reasons stated above, McMillan's motion to vacate, set aside, or correct sentence will be denied.


1/12/12
_____
Date

_____
William D. Quarles, Jr.
United States District Judge